UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, CRISTINE RIDEY, PATRICIA SAWCZUK, and ANNE ARUNDEL COUNTY, individually and on behalf of all others similarly situated, | Case No. 26-mc-201-DDC-TJJ |
| Plaintiffs, | (related to Case No. 22-cv-2501-DDC-TJJ) |
| v. | |
| TEVA PHARMACEUTICALS INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC., | |
| Defendants. | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on the Motion to Quash Subpoena for the Deposition of Non-Party Attorney Christopher T. Holding ("Motion to Quash") (ECF No. 1) filed by Defendants and Mr. Holding (collectively "Defendants"). They request an order quashing the subpoena for the deposition of Mr. Holding that Plaintiffs served in the related action, *Burge, et al. v. Teva Pharmaceuticals Industries, Ltd. et al.*, Case No. 22-cv-2501 (D. Kan. filed Dec. 2, 2022). As explained below, the Motion to Quash is granted.

## I.    Brief Background of the Phase I Discovery Dispute[1]

Plaintiffs served a deposition subpoena upon Mr. Holding setting his deposition for November 13, 2025, in Boston, Massachusetts (the "Subpoena").[2] Mr. Holding is one of the attorneys currently representing Defendants in this action. On November 10, 2025, Defendants initiated a miscellaneous action in the District of Massachusetts (25-mc-91527) by filing the Motion to Quash the Subpoena. On January 6, 2026, the District of Massachusetts granted Plaintiffs' motion to transfer the Motion to Quash to the District of Kansas.[3] Upon transfer to the District of Kansas, the case was assigned miscellaneous case number 26-mc-201-DDC-TJJ.

## II.    Legal Standards

The deposition of an attorney for a party is not prohibited by the Federal Rules of Civil Procedure.[4] And while the Federal Rules exempt privileged material from discovery, they "do not themselves exempt attorneys from being a source of discoverable facts."[5] "Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a

---

[1] The background of this case is set forth in more detail in the Court's other Phase I discovery rulings (ECF Nos. 152, 153, 181, 202, 226) in the related Case No. 22-cv-2501. The related case is currently bifurcated with Phase I discovery focused on the pivotal issues of the timeliness of Plaintiffs' claims under the applicable statutes of limitations and the related issues of tolling and fraudulent concealment.

[2] Subpoena (ECF No. 3-1). The Subpoena was issued from the District of Kansas.

[3] *See* Mem. & Order (ECF No. 38).

[4] *See* Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose *any person* . . . without leave of court except as provided in Rule 30(a)(2).") (emphasis added).

[5] *Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291-JAR, 2015 WL 419716, at *2 (D. Kan. Feb. 2, 2015) (quoting *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247 (D. Kan. 1995)).

2

party to represent them in litigation."[6]

Courts in this District have, however, entered protective orders prohibiting the depositions of opposing counsel, recognizing the potential for abuse in deposing an opponent's attorney by encouraging "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[7] In *Shelton v. American Motors Corp.*,[8] the Eighth Circuit Court of Appeals held that depositions of opposing counsel should be limited to circumstances where the party seeking to take the deposition has shown that: "(1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[9] In *Boughton v. Cotter Corp.*,[10] the Tenth Circuit affirmed this heightened requirement for deposing opposing counsel, holding that ordinarily the trial court has the discretion under Fed. R. Civ. P. 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three criteria set forth in

---

[6] *Id.*

[7] *Nelson v. Hardacre*, 312 F.R.D. 609, 614 (D. Kan. 2016); *DeWitt v. Sw. Bell Tel. Co.*, No. 12-2605-SAC, 2014 WL 695744, at *6 (D. Kan. Feb. 24, 2014); *Ed Tobergte Assocs. Co. v. Russell Brands, LLC,* 259 F.R.D. 550, 554 (D. Kan. 2009).

[8] 805 F.2d 1323, 1327 (8th Cir. 1986).

[9] *Shelton,* 805 F.2d at 1327. Some courts in this district have referred to this heightened standard as the "*Simmons* criteria" as they were first utilized in this district in *Simmons Food, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000). *Nelson*, 312 F.R.D. at 614.

[10] 65 F.3d 823, 829–30 (10th Cir. 1995).

*Shelton v. American Motors Corp.* are not met.[11] Courts applying the *Shelton* criteria place the burden of establishing the three criteria on the party seeking to take the deposition of opposing counsel.[12]

**III.    Whether Plaintiffs Have Met Their Burden Under the *Shelton* Criteria to Depose Defendants' Counsel**

Plaintiffs, as the party seeking the deposition of Mr. Holding, have the burden to show that all three *Shelton* criteria are satisfied.[13] Plaintiffs state they seek to depose Mr. Holding solely as a fact witness about "(1) communications with regulators about the Nuvigil and EpiPen Settlements, (2) communications with Mylan and Pfizer's counsel about these settlements, and (3) communications with Teva that implicate Teva's concealment of the relatedness of the Nuvigil and EpiPen Settlements."[14] Plaintiffs state they "will not examine Mr. Holding about Teva's

---

[11] Defendants contend the Court should apply the *Shelton* factors to the subpoena served upon Mr. Holding, arguing that the First Circuit has applied a similar test in *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (appropriate factors for motion to quash subpoena served upon opposing counsel are "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case."). In their response, Plaintiffs argue the Court should not apply the rigid *Shelton* factors and burden framework to the Subpoena for Mr. Holding's deposition. The Court rejects Plaintiffs' arguments and will apply the *Shelton* factors and burden framework here. Plaintiffs have not offered any persuasive arguments that convince the Court a shift to the *Bogosian* test is warranted here. In any event, the Court finds the *Shelton* and *Bogosian* tests are similar or functionally equivalent and the Court would reach the same result under either. That is, under the heightened standard of either test for requests to depose opposing counsel, the deposition should not be allowed because the information sought from Mr. Holding can be obtained from other sources and in part would not appear to even be relevant.

[12] *Ed Tobergte Assocs.,* 259 F.R.D. at 555.

[13] *Id.* at 555.  *See also Boughton*, 65 F.3d at 830 n. 10 (finding the burden was on plaintiffs to establish that the *Shelton* criteria were met to take the deposition of defense counsel).

[14] Pls.' Resp. (ECF No. 29) at 16–17. The "EpiPen Settlement" is the settlement of the litigation captioned *King Pharm., Inc., et al, v. Teva Parenteral Med., Inc., et al.*, No. 1:09-cv-00652 (D. Del. Aug. 8, 2009).  The "Nuvigil Settlement" is the settlement of the litigation captioned *Cephalon, Inc. v. Mylan Pharms., Inc.*, No. 1:09-cv-00954 (D. Del. Dec. 11, 2009). The "EpiPen MDL" is the District of Kansas multidistrict litigation captioned *In re: EpiPen*, No. 17-md-2785, and all actions consolidated within it.

litigation strategy in the underlying action, ensuring the deposition remains within proper factual bounds."[15]

In order to determine whether Plaintiffs should be permitted to depose Mr. Holding, the Court analyzes the information Plaintiffs seek from Mr. Holding under the three *Shelton* criteria. For each of the three proposed areas of inquiry, Plaintiffs must show (1) no other means exist to obtain this information except to depose Mr. Holding; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of Plaintiffs' case.

### A.    Communications with Regulators and Mylan and Pfizer's Counsel About the Nuvigil and EpiPen Settlements

Plaintiffs argue Mr. Holding is uniquely positioned to provide the information they seek regarding communications with regulators about the Nuvigil and EpiPen Settlements. They point out Mr. Holding signed the MMA letters on Teva's behalf disclosing the EpiPen Settlement and Nuvigil Settlement to regulators.[16] He is the lone signatory on those letters making representations to regulators that the EpiPen and Nuvigil Settlements were not contingent upon any other agreements. Plaintiffs also claim that Mr. Holding "appears to have discussed Teva's MMA letters with Mylan/Pfizer's counsel."[17] Plaintiffs contend there is no substitute for Mr. Holding's deposition testimony about these important communications and his unique knowledge on this

---

[15] *Id.*

[16] MMA letters are filings made pursuant to the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), which requires certain agreements between brand-name drug manufacturers and generic drug applicants be filed with the Federal Trade Commission ("FTC") and the Department of Justice. *Pharmaceutical Agreement Filings*, Federal Trade Comm'n (Mar. 17, 2026), https://www.ftc.gov/advice-guidance/competition-guidance/industry-guidance/competition-health-care-marketplace/pharmaceutical-agreement-filings. Mr. Holding signed MMA letters to the FTC dated May 2, 2012 that enclosed the Binding Term Sheets for the Nuvigil Settlement and EpiPen Settlement. Pls.' Resp. Exs. 2 and 3 (ECF Nos. 29-2 and 29-3) (sealed).

[17] Pls.' Resp. (ECF No. 29) at 18.

critical issue of fact. Plaintiffs also argue Mr. Holding is uniquely positioned to discuss his conversations with federal regulators and Mylan and Pfizer's counsel about Teva's regulatory filings and Teva has identified no other witnesses with comparable knowledge who spoke with federal regulators or opposing counsel about Teva's MMA letters.

Defendants argue that Mr. Holding's narrow role in filing the mandatory MMA filings with the FTC and his 2016 correspondence with the FTC does not warrant his deposition, and Plaintiffs have other viable means of obtaining information about communications with regulators and Mylan and Pfizer's counsel about the Nuvigil and EpiPen Settlements. With respect to Teva's communications with regulators, Defendants argue Plaintiffs have another fact witness, Teva's former general counsel David Stark, who can be deposed regarding FTC-related filings and communications with the FTC. Defendants point out Mr. Stark was included as a participant on five 2016 email communications to or from Mr. Holding about the FTC notice letter. They note Plaintiffs have indicated their intent to depose Mr. Stark, and Defendants have not objected to that proposed deposition notice. In addition to Mr. Stark, Defendants argue Plaintiffs can obtain information from deposing Teva's Rule 30(b)(6) witness. Defendants state Teva has committed to provide corporate testimony on "Teva's decision regarding what to disclose (or not disclose) in public press releases, regulatory filings, or communications with the FTC, DOJ, or Congress relating to the EpiPen and Nuvigil patent litigation settlements."[18] Defendants argue this shows Plaintiffs have other sources besides Mr. Holding and he is not the sole person who can testify regarding Teva's communications with regulators about the Nuvigil and EpiPen Settlements. Defendants also argue Plaintiffs provide no basis to conclude that Mr. Holding has any relevant

---

[18] Defs.' Mem. in Support of Mot. to Quash (ECF No. 2) at 20.

personal knowledge regarding settlement communications with counsel for Mylan or Pfizer. But even if he did, Plaintiffs could seek this discovery from third parties Mylan or Pfizer without deposing Mr. Holding.

Plaintiffs acknowledge they have scheduled the depositions of Teva's in-house counsel and a Rule 30(b)(6) witness, who will testify about Teva's disclosure of the settlements and regulatory statements, but argue the witnesses will not have first-hand knowledge about what Mr. Holding told federal regulators and Mylan's counsel about Teva's regulatory filings. Plaintiffs state they have identified conversations with both regulators and Mylan's counsel that include no Teva employees. Nor can these witnesses provide competent testimony about communications authored and signed by Mr. Holding.

The Court considers the parties' arguments in light of the applicable law. Plaintiffs must first show whether other means exist to obtain the information sought other than deposing Mr. Holding. This requires a showing that taking Mr. Holding's deposition is the "only reasonably practical means available for obtaining the information."[19] The party seeking the deposition of opposing counsel should consider other discovery sources that "do not involve the same dangers as an oral deposition of opposing counsel."[20] "If there are other available sources, the party seeking the discovery should explore them first."[21] "If there are other persons available who have the information, they should be deposed first."[22]

---

[19] *Ed Tobergte Assocs.,* 259 F.R.D. at 555.

[20] *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 379 (D. Kan. 1996) (citations omitted).

[21] *Id.*

[22] *Id.*

Here, the Court finds Plaintiffs have not met their burden to show that deposing Mr. Holding is the sole means to obtain information regarding communications with regulators about the Nuvigil and EpiPen Settlements. The fact he is the lone signatory on the MMA letters to regulators enclosing binding term sheets for the Nuvigil Settlement and EpiPen Settlement does not establish he is the sole source of information regarding the letters he sent on behalf of Teva. While Mr. Holding signed the letters transmitting the Binding Term Sheets to the FTC, his signature does not appear as one of the signers of the executed Binding Term Sheets. The individuals who actually signed the Binding Term Sheets would also be sources of statements and information Mr. Holding relayed to the FTC on behalf of Teva in the letters at issue.[23] In addition, email communications indicate Teva's former general counsel, Mr. Stark, was involved with Mr. Holding regarding the FTC-related filings.[24] The Court is not persuaded by Plaintiffs' arguments, which suggest Mr. Holding was having communications with the FTC of which Teva's general counsel was unaware. The Court finds this argument unconvincing and rejects it.

Plaintiffs repeatedly reference the Court's rulings after its *in camera* review in the related Case (No 22-cv-2501) that ordered Defendants to produce certain unredacted privileged documents to support their opposition to the motion to quash Mr. Holding's deposition. But the document production ordered there is far different from Plaintiffs' request to depose Mr. Holding here.[25] Although Mr. Holding was a participant in some of the 2016 emails ordered to be disclosed

---

[23] *See* signature pages of Binding Term Sheets for Nuvigil Settlement (ECF No. 29-2) and EpiPen Settlement (ECF No. 29-3) (sealed). For example, one of the signatures on the Binding Term Sheets is Teva's general counsel, Mr. Stark.

[24] *See* April 29, 2012 Stark email. Pls. Resp. Ex. 4 (ECF No. 29-4) (sealed).

[25] The three *Shelton* criteria were not applicable to the document productions pursuant to the subpoenas served on opposing counsel at issue in those rulings. *See* ECF No. 312 at 8 and ECF No. 202 at 8 in related Case No. 22-cv-2501.

after *in camera* review, those emails do not establish Mr. Holding was the sole source of information on those communications.

Plaintiffs thus have other sources of information regarding these issues; they can depose Teva's general counsel and 30(b)(6) corporate representative regarding Teva's communications with the FTC and regulators about the Nuvigil and EpiPen Settlements, and Plaintiffs can obtain information about Mr. Holding's communications with Mylan and Pfizer's counsel directly from those third parties.

**B.      Communications with Teva that Implicate Teva's Concealment of the Relatedness of the Nuvigil and EpiPen Settlements**

Plaintiffs also seek to depose Mr. Holding regarding his communications with Teva that implicate Teva's concealment of the relatedness of the Nuvigil and EpiPen Settlements. Plaintiffs state Mr. Holding was "involved in several conversations on the day that the parties settled the Nuvigil and EpiPen Settlements," and attach an exhibit with five entries from Defendants' privilege log that list emails with April 26, 2012 sent dates to or from Mr. Holding. Three entries are described as emails between Teva's in-house counsel and outside counsel (Mr. Holding) "requesting legal advice regarding the EpiPen patent litigation settlement agreement with Pfizer and Mylan."[26]

Defendants deny that Mr. Holding had any involvement in negotiating the underlying patent settlements.  They argue the evidence shows that the EpiPen and Nuvigil settlements were negotiated by business executives and in-house counsel at Teva, Mylan, and Pfizer, not trial counsel for the parties or other outside counsel. Defendants dispute Plaintiffs' characterization of Mr. Holding's involvement in the settlements and explain the appearance of Mr. Holding's name

---

[26] Pls.' Resp. Ex. 1 (ECF No. 29-1).

in the five April 26, 2012 entries on their privilege log is consistent with his acknowledged and limited role in submitting the settlements to the FTC for Teva. Defendants further claim that the Goodwin Proctor law firm did not serve as trial counsel for Teva in either patent litigation. It did enlist a different Goodwin attorney, Christopher Denn, who is not a litigator, to assist with reducing the agreements to writing. Plaintiffs' counsel previously deposed Mr. Denn in the EpiPen MDL. Defendants argue this shows Plaintiffs have other viable means of obtaining the same information they purport to seek from Mr. Holding.

Here, the Court finds little evidence supports Plaintiffs' conjecture that Mr. Holding was involved in negotiating the EpiPen Settlement or the Nuvigil Settlement in January through April 2012. The focus of Plaintiffs argument is the appearance of Mr. Holding's name in five privilege log entries dated April 26, 2012, but those entries are consistent with Defendants' explanation that Mr. Holding's role was limited to post-negotiation regulatory compliance work in submitting the settlements to the FTC.[27] The evidence also supports Defendants' assertion that the EpiPen and Nuvigil settlements were negotiated by business executives and in-house counsel at Teva, Mylan, and Pfizer, and they would be primary sources for information about communications that allegedly implicate Teva's concealment of the relatedness of the Nuvigil and EpiPen Settlements. Plaintiffs have thus failed to establish that no other means exist to obtain this information except to depose Mr. Holding.

## IV.    Conclusion

Plaintiffs argue Mr. Holding's deposition could be limited to narrow factual issues that would not invade attorney-client privilege or inquire into "his litigation strategy." The Court finds

---

[27] *See* Pls. Resp. Ex. 4 (ECF No. 29-4) (email exchange providing Mr. Holding's name in response to a query for the Goodwin attorney Teva would use "for the FTC filing.").

such limitations are not practical or feasible. And the proposed limitation is not sufficient to address the Court's general concerns regarding the deposition of an attorney actively representing Defendants in the related case. As this Court has long recognized, taking the deposition of opposing counsel poses a number of unique problems:

> To permit unbridled depositions of a party's attorney opens the door to delay, disruption of the case, harassment, and perhaps disqualification of the attorney. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of the litigation. It could lead to additional pretrial delays to resolve work-product and attorney-client objections, and delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the chilling effect that such practice will have on the truthful communications from the client to the attorney is obvious. [28]

In light of these potential problems associated with allowing depositions of opposing counsel, the Court is not convinced Plaintiffs' proposed limitations are realistic or practical. Moreover, allowing the deposition of Mr. Holding, even if it could be limited to questions seeking relevant and non-privileged information, would likely disrupt the effective operation of the adversarial system and thus should only be pursued if he is the sole source of the information sought (even if he had some involvement in relevant, non-privileged communications). Plaintiffs have not convinced the Court that their proposed limitation of Mr. Holding's deposition would address the unique problems likely created by his role as counsel in the case.

---

[28] *Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D. Kan. 1994) (citations omitted). This quoted language from *Kelling* is consistent with the caselaw cited by Defendants. *See George P. Johnson Co. Hong Kong Ltd. v. L.E.K. Consulting LLC*, No. 1:20-CV-11269-NMG, 2022 WL 22902703, at *5 (D. Mass. Nov. 21, 2022) ("[D]eposing a party's lawyer is a perilous proposition, even when the lawyer has participated in some ordinary (i.e. non-privileged) business communications. Such a deposition is, at best, a last resort.").

11

In conclusion, Plaintiffs have failed to persuade the Court that the information they seek from opposing counsel, Mr. Holding, cannot be obtained from other sources or to some extent that the information Mr. Holding could provide would even be relevant to the Phase I issues in the case. Because Plaintiffs have failed to establish the first *Shelton* factor that no other means exist to obtain the specific information they seek except to depose Mr. Holding, the Court need not address in depth the other two factors regarding whether the information is relevant, nonprivileged, and/or crucial to Plaintiffs' preparation of the case.[29]

**IT IS THEREFORE ORDERED** that the Motion to Quash Subpoena for the Deposition of Non-Party Attorney Christopher T. Holding (ECF No. 1) is **granted**.

IT IS SO ORDERED.

Dated March 17, 2026, at Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge

---

[29] *See Harris v. Euronet Worldwide, Inc.*, No. 06-2537-JTM-DWB, 2007 WL 1557415, at *3 (D. Kan. May 29, 2007) (granting protective order prohibiting deposition of plaintiff's counsel upon finding the defendants failed to establish the first *Shelton* factor without addressing other two factors). Even if the Court considered the second *Shelton* factor, it finds Plaintiffs have not shown Mr. Holding would have relevant information about Teva's negotiations and communications *prior* to the Nuvigil and EpiPen Settlements.